UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | | |
|---|---|---|
| MIDWEST INVESTMENT PARTNERS LLC, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | 3:13-cv-00174-RLY-WGH |
| STANDARD GOLD HOLDINGS, INC., | ) ) ) | |
| Defendant. | | |

**ENTRY ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Midwest Investment Partners LLC ("Midwest"), is the holder of two convertible promissory notes issued by Defendant, Standard Gold Holdings, Inc. ("Standard Gold"). Midwest brought suit against Standard Gold alleging breach of contract due to default on each note. Pursuant to a fee-shifting provision contained within each note, Midwest also seeks to recover attorneys' fees and expenses from Standard Gold in relation to Midwest's attempts to collect payment on the notes. Standard Gold argues that the fee-shifting provisions are unenforceable, or at the very least, there is a factual dispute regarding their enforceability. Midwest moves for summary judgment regarding Standard Gold's liability for payment of principal and interest on the two promissory notes and payment of Midwest's attorneys' fees and expenses. For the reasons stated below, Midwest's motion is **GRANTED**.

1

**I.     Background**

Midwest and Standard Gold are parties to two convertible promissory notes, No. MIP-1.1 ("Note 1.1") and No. MIP-2 ("Note 2"). (Complaint ¶¶ 7-9, Filing No. 1; Deposition of Frederick Shultz ("Shultz Dep.") ¶¶ 3, 8, Filing No. 22-2). Midwest is the holder of both notes which were issued by Standard Gold. (Shultz Dep. ¶¶ 3, 8, Filing No. 22-2).

Note 1.1, dated April 5, 2011, is for the principal amount of $50,000 and provides that interest will accrue at an annual rate of six percent. (Complaint ¶ 8, Filing No. 1; Complaint Exhibit 2, Filing No. 1-2). The maturity date of Note 1.1 was October 6, 2011. (Complaint ¶ 8, Filing No. 1; Complaint Exhibit 2, Filing No. 1-2). Note 2, dated September 2, 2011, is for the principal amount of $25,000 and provides that interest will accrue at an annual rate of six percent. (Complaint ¶ 9, Filing No. 1; Complaint Exhibit 3, Filing No. 1-3). The maturity date of Note 2 was February 29, 2012. (Complaint ¶ 9, Filing No. 1; Complaint Exhibit 3, Filing No. 1-3).

Both notes contain the following fee shifting provision: "Holder may employ an attorney to enforce its rights and remedies hereunder and Company [Standard Gold] hereby agrees to pay Holder's reasonable attorneys' fees and other reasonable expenses incurred by Holder in exercising any of Holder's rights and remedies upon default . . . ." (Complaint Exhibit 2, § 4.2(b), Filing No. 1-2; Complaint Exhibit 3, § 4.2(b), Filing No. 1-3). Further, both notes define default in part as "[t]he Company's [Standard Gold] failure to remit to Holder the Principal or interest hereof as the same becomes due

hereunder . . . ." (Complaint Exhibit 2, § 4.1(a), Filing No. 1-2; Complaint Exhibit 3, § 4.1(a), Filing No. 1-3).

Midwest made written demands for payment from Standard Gold on both notes after their respective maturity dates. (Complaint ¶ 11, Filing No. 1; Shultz Dep. ¶¶ 5, 10, Filing No. 22-2). Midwest has not received any payment from Standard Gold on either Note 1.1 or Note 2. (Complaint ¶ 12, Filing No. 1; Shultz Dep. ¶¶ 6, 11, Filing No. 22-2). Midwest has now hired attorneys to enforce its rights and remedies under both notes. (Shultz Dep. ¶ 13, Filing No. 22-2).

## II.     Summary Judgment Standard

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Advisory Committee Note to 1963 Amendment of FED. R. CIV. P. 56(e)). Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine dispute of material fact exists if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party on the particular issue. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

On a motion for summary judgment, the moving party must show "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). After the moving party shows that there is an absence of a genuine issue for trial, the burden shifts to the non-movant to "go beyond the pleadings"

3

and to point to evidence of a genuine factual dispute precluding summary judgment. *Id.* at 322-23. "If the non-movant does not come forward with evidence that would reasonably permit the finder of fact to find in [its] favor on a material question, then the court *must* enter summary judgment against [it]." *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994) (emphasis in original) (citing *Matsushita*, 475 U.S. at 585-87; *Celotex*, 477 U.S. at 322-24; *Anderson*, 477 U.S. at 249-52).

## III. Discussion

Midwest has moved for summary judgment on all four counts contained in its complaint. In Count I, Midwest alleges breach of contract on Note 1.1 by Standard Gold as a result of Standard Gold's lack of payment of the principal and interest due on the note. In Count II, Midwest seeks to recover attorneys' fees and other reasonable expenses it paid to enforce its rights and remedies under Note 1.1. In Count III, Midwest alleges breach of contract on Note 2 by Standard Gold as a result of Standard Gold's lack of payment of the principal and interest due on the note. In Count IV, Midwest seeks to recover attorneys' fees and other reasonable expenses it paid to enforce its rights and remedies under Note 2. Given the similarities in the counts, Counts I and III will be combined in the analysis below, as will Counts II and IV.

### A. Default on Note 1.1 and Note 2 (Counts I and III)

Midwest is entitled to summary judgment on Counts I and III regarding Standard Gold's default on Note 1.1 and Note 2. Rather than pointing to a dispute regarding a material fact, Standard Gold admitted to all material allegations brought forth in Midwest's complaint concerning default on the notes. (Answer ¶¶ 13-17, 24-28, Filing

4

No. 13). Further, Standard Gold admitted its liability to Midwest for the principal and interest amounts due under both notes. (*Id.* at ¶¶ 18, 29). Thus, Standard Gold has failed to raise a genuine issue of material fact relating to its default and liability regarding Note 1.1 and Note 2, and Midwest is entitled to summary judgment on Counts I and III.

**B.     Attorneys' Fees and Other Reasonable Expenses (Counts II and IV)**

Midwest argues that it is entitled to recovery of its attorneys' fees and other reasonable expenses because Standard Gold defaulted on both notes, both notes include the same provision that allows for shifting of attorneys' fees upon default, and the fee-shifting provisions are enforceable. Standard Gold does not dispute that it defaulted on the notes, as stated above, and that each note contains the provision permitting recovery of attorneys' fees and other reasonable expenses by the Holder, Midwest, upon default. Standard Gold's primary argument in opposition to Midwest's motion is that the fee-shifting provisions of Note 1.1 and Note 2 are unenforceable according to Colorado law.[1] In the alternative, Standard Gold argues there are fact-questions as to the enforceability of the provisions and that the issue of granting attorneys' fees cannot be decided at this point in the proceeding.

**1.     Enforceability of the Fee-Shifting Provisions**

In determining whether Midwest and Standard Gold included an enforceable fee-shifting provision in the notes, the court applies the general principles of contract interpretation. *Cache Nat'l Bank v. Lusher*, 882 P.2d 952, 956-57 (Colo. 1994)

---

[1] Both notes contain a provision that states, "This Note will be governed by the laws of the State of Colorado without regard to conflicts of laws principles." (Complaint Exhibit 2, Filing No. 1-2; Complaint Exhibit 3, Filing No. 1-3).

5

("Promissory notes . . . are subject to the principles of interpretation and construction that govern contracts generally."). "The primary goal of contract interpretation is to determine and give effect to the intent of the parties." *Ad Two, Inc. v. City & Cnty. of Denver*, 9 P.3d 373, 376 (Colo. 2000) (citing *USI Props. E., Inc. v. Simpson*, 938 P.2d 168, 173 (Colo. 1997)). The intent of the parties is determined generally from the language of the instrument itself. *Id.* An unambiguous contract is conclusive of the parties' intent and is enforced according to its plain and ordinary meaning as a matter of law. *Lake Durango Water Co. v. Pub. Utils. Comm'n*, 67 P.3d 12, 20 (Colo. 2003). In determining whether a contract is ambiguous, "the instrument's language must be examined and construed in harmony with the plain and generally accepted meanings of the words used, and reference must be made to all the agreement's provisions." *Id.*; *see also Allstate Ins. Co. v. Huizar*, 52 P.3d 816, 819 (Colo. 2002). "[A] contract is ambiguous 'if it is fairly susceptible to more than one interpretation.'" *E. Ridge of Fort Collins*, 109 P.3d at 974 (quoting *Dorman v. Petrol Aspen, Inc.*, 914 P.2d 909, 912 (Colo. 1996)).

      The fee-shifting provision states, in relevant part, that the "Holder may employ an attorney to enforce its rights and remedies hereunder and Company [Standard Gold] hereby agrees to pay Holder's reasonable attorneys' fees and other reasonable expenses incurred by Holder in exercising any of Holder's rights and remedies upon default . . . ." (Complaint Exhibit 2, § 4.2(b), Filing No. 1-2; Complaint Exhibit 3, § 4.2(b), Filing No. 1-3). The provision can be broken down into two parts, and its meaning is quite plain on

its face.[2] First, Midwest could use an attorney to enforce its rights and remedies under the notes. Second, if Standard Gold defaulted on the notes, the company agreed to pay Midwest's reasonable attorney fees and other expenses allowed in the first part of the provision. Further, default is defined as the occurrence of one of five discrete events in the section that precedes the fee-shifting provision in each note. Given the plain meaning of the language contained in the provision itself as well as other clarifying language found in each note, the fee-shifting provision is not fairly susceptible to more than one interpretation. Thus, the provision is not ambiguous.

The principles of contract interpretation do not preclude enforcement of the fee-shifting provision in each note. "When a contract is unambiguous, the court must, in the absence of a showing that the contract is voidable on grounds such as mistake, fraud, duress, undue influence, or the like, or unless the result would be an absurdity, give effect to the contract as written." *Lake Durango Water Co.*, 67 P.3d at 20 (citing R. Lord, Williston on Contracts, Interpretation and Construction § 30:6 (4th ed. 1999)). There is no evidence of mistake, fraud, duress, undue influence, or any similar situation that would render the contract voidable by Standard Gold, and Standard Gold has not alleged any of these situations. In addition, enforcing an express, unambiguous contractual provision, which contains limitations on when and to what extent it is applicable, results not in an absurdity but rather a reasonable outcome. Thus, the fee-shifting provision is enforceable.

---

[2] Standard Gold stated in its answer that the provision in question "speaks for itself." (Answer ¶¶ 20, 31, Filing No. 13).

## 2. Standard Gold's Strict Construction and Prevailing Party Argument

Standard Gold argues that the fee-shifting provision should be found unenforceable because it "arguably requires [Standard Gold] to pay [Midwest's] attorneys' fees in any dispute over a purported default, regardless of which party ultimately prevails." (Defendant's Response to Plaintiff's Motion for Summary Judgment ¶ 9, Filing No. 37). In support of its position, Standard Gold cites two cases: *Standard Bank, PLC v. Runge, Inc.*, No. 07-cv-1989, 2012 WL 3264288 (D. Colo. Aug. 9, 2012), *rev'd*, 557 Fed. Appx. 778 (10th Cir. 2014),[3] and *General Steel Domestic Sales, LLC v. Rising Sun Missionary Baptist Church, Inc.*, No. 11-cv-1332, 2012 WL 1801955 (D. Colo. May 17, 2012). Neither case is applicable to the present set of facts.

In *Standard Bank*, the district court refused to enforce a fee shifting provision in the parties' contract because, it reasoned, "fee shifting agreements. . .are in derogation of the American rule [as to parties' responsibility for attorneys' fees]" and there was no evidence of the parties' negotiations on the matter. 2012 WL 3264288, at *2. In reversing the district court's decision, the Tenth Circuit called into question the sufficiency of the district court's analysis of the validity of the fee-shifting provision, noting that it was only three sentences long and did not discuss or cite to any Colorado cases. *Standard Bank*, 557 Fed. Appx. at 781. Thus, the precedential value of the district court's statement, which was quoted by Standard Gold, is questionable at best.

---

[3] In citing to the district court opinion in its response, Standard Gold does not indicate that the decision was reversed by the Tenth Circuit. (Defendant's Response to Plaintiff's Motion for Summary Judgment ¶ 3, Filing No. 37).

8

Even if fee-shifting provisions must be strictly construed according to Colorado law, the provisions at issue here are enforceable, notwithstanding the fact that the provisions do not explicitly speak to Midwest's prevailing party status. Each provision unambiguously states that Standard Gold will pay reasonable attorneys' fees and expenses "upon Default." (Complaint Exhibit 2, § 4.2(b), Filing No. 1-2; Complaint Exhibit 3, § 4.2(b), Filing No. 1-3). The inclusion of the phrase "upon Default" indicates that Standard Gold must default on a note for the fee-shifting provision in that note to have any effect. Standard Gold has admitted default on both notes and has been adjudged to have defaulted on both notes. As required by the fee-shifting provisions, Midwest has prevailed on the issue of default.

In *General Steel Domestic Sales, LLC v. Rising Sun Missionary Baptist Church, Inc.* the plaintiff moved to compel arbitration based on an arbitration clause contained in a contract. 2012 WL 1801955, at *1. The defendant argued that the arbitration clause was unconscionable and thus, unenforceable. *Id.* at *2. As part of its analysis, the court examined a fee-shifting provision contained within the arbitration clause. *Id.* at *5. The provision stated that "in addition to any other liability [the defendant] may have to [the plaintiff], [the defendant] agrees to pay [the plaintiff] all legal and other expenses incurred by [the plaintiff] in collecting any amounts due from [the defendant] or incurred in any other dispute relating to this agreement." *Id.* (emphasis omitted). The court held that the provision could be interpreted as requiring the defendant to pay for plaintiff's legal fees resulting from any dispute related to the contract without regard to which party prevailed. *Id.* This could be substantively unfair, pushing the analysis in favor of not

9

enforcing the arbitration clause. *Id.* However, the court stopped short of actually interpreting the provision in this way. *Id.* The court stated that a broad interpretation of the provision was not required by its language and, because the arbitrator could subsequently interpret it narrowly, a court interpretation would be speculative. *Id.*

The fact that the *General Steel* court stated that the fee-shifting provision was open to interpretation as to its prevailing party requirement severely reduces the value of the case to Standard Gold's argument. The provision in *General Steel*, which does not mention a prevailing party or include a default or breach requirement, is much broader than the provision in the case at hand. The possibility that a much broader provision, that did not have a limitation on its applicability such as a default requirement, could be interpreted as enforceable and requiring a prevailing party only supports the position that the narrower provision in the case at hand is enforceable. Further, the *General Steel* court analyzed that fee-shifting provision within the context of determining whether the arbitration clause was unconscionable. In contrast, the fee-shifting provision contained in both notes in the present case is not a sub-part to a broader clause at issue, and Standard Gold did not present an unconscionability argument regarding the provisions.

Lastly, Standard Gold attempts to draw parallels between *General Steel* and the current case by arguing that the fee-shifting provisions' interpretation and application are uncertain and speculative at this time. The provision in *General Steel* was uncertain and speculative because the court was speculating on how the arbitrator might ultimately interpret and apply the provision. Here, there will be no other party subsequently interpreting the provision. The court is interpreting the provision as a matter of law

10

without uncertainty or speculation. *See Lake Durango Water Co.*, 67 P.3d at 20 (stating that unambiguous language in a contract is construed by the court as a matter of law). Thus, Standard Gold's reliance on *General Steel* is misplaced, and its strict construction and prevailing party argument is rejected.

### 3. Standard Gold's Other Arguments against Enforcement

In the alternative, Standard Gold argues there are fact-questions as to the fee-shifting provision's enforceability that preclude summary judgment. If a party opposing summary judgment argues that there is a factual dispute, it must support that argument by "citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence . . . of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(A)-(B). "The court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3). Standard Gold does not point to any disputed facts surrounding the enforceability of the fee-shifting provision, and the court does not find any materials in the record that support the existence of a genuine factual dispute. Standard Gold's arguments are based upon interpretation of the fee-shifting provisions not any factual disputes. Thus, Standard Gold has failed to meet its burden, and this alternative argument is rejected.

Standard Gold also argues that this court cannot enter summary judgment pertaining to the fee-shifting provision at this time due to its pending motion to assert counterclaims. (Defendant, Standard Gold Holdings, Inc.'s Motion for Leave to File Amended Answer and Counterclaims to Plaintiff's Complaint, Filing No. 20).

11

Subsequent to Standard Gold's filing of its response to plaintiff's motion for summary judgment, this court denied the motion to assert counterclaims. (Order on Motion for Leave to File Amended Answer and Counterclaims to Plaintiff's Complaint, Filing No. 40). Thus, this argument is moot and is not considered by the court.

**IV.     Conclusion**

Standard Gold admitted to its default on both Note 1.1 and Note 2 and to its liability to Midwest for the principal and interest owed on both notes.  Further, Standard Gold failed to meet its burden of pointing to evidence of a genuine factual dispute precluding summary judgment with regard to the enforceability of the fee-shifting provision of each note.  Midwest has shown that there is no genuine dispute as to any material fact in Counts I-IV and it is entitled to judgment as a matter of law on those counts.  Therefore, the court **GRANTS** Midwest's motion for summary judgment on Counts I-IV. (Filing No. 22).

**SO ORDERED** this 28th day of August 2014.

_____
RICHARD L. YOUNG,  CHIEF JUDGE
United States District Court
Southern District of Indiana

Distributed Electronically to Registered Counsel of Record